Good morning, everyone, and welcome. And I have to say, it's really wonderful to see you all here in person. We started to reopen and hold in-person arguments last fall and then had to revert to remote arguments for a period of time over the winter during the Omicron surge, so it's good to see you back here in the courtroom. With that welcome, we'll call our first case, which is DeAngelo Sanders v. Joseph. I think we have a divided argument on behalf of Mr. Sanders this morning. Good morning, Your Honors, and may it please the Court. My name is Shannon McCurgy. I am a law student at Notre Dame Law School and along with Madeline Callahan and Attorney Robert Palmer, we represent Appellant DeAngelo Sanders. This appeal arises after this Court granted Mr. Sanders' petition for rehearing and vacated its prior order that affirms the denial of Mr. Sanders' petition under 28 U.S.C. § 2241. In this appeal, Ms. Callahan and I have structured our argument around the Davenport factors which this Court requires to bring a savings clause petition. I will address the first factor, that Mr. Sanders relies on a new case of statutory interpretation. My partner will address that it was not possible for Mr. Sanders to raise this argument in prior proceedings, and additionally that denial of his petition would perpetrate a miscarriage of justice. Speaking to the first Davenport factor, Mr. Sanders relies on the Supreme Court decision, Mathis v. United States, in this appeal, and this is a case of statutory interpretation. In Chazin v. Marski, this Court stated that Mathis is a case of statutory interpretation because of its focus on interpreting the ACCA. Mathis additionally satisfies the requirements of bringing a savings clause petition. Ms. Mukherjee, let me stop you at a fundamental point here, which is the extent to which this claim depends upon Mathis, as opposed to this Court's more recent decision in Glispie. I understood the issue here on the merits to be whether the Illinois adoption of this notion of limited authority broadens residential burglary too much to count under the Armed Career Criminal Act. That sounds to me a lot like a Glispie claim, not a Mathis claim. Your Honor, we rely on Mathis here in bringing this claim because the fact that Mathis portrays a new role in clarifying exactly how indivisible statutes ought to be analyzed. Well, yeah, we're all very familiar with Mathis. We've been living with it for six years now almost, and with lots and lots of iterations. And I understand kind of read broadly, it guides us in trying to distinguish between means and ends, distinguishing between statutes that are divisible and indivisible for these purposes. But how does it help Mr. Sanders? Yes, Your Honor. We are using Glispie to certainly bolster Mr. Sanders' argument here and showing that when the Mathis approach is applied, the result is that Illinois residential burglary is in fact broader than the generic offense and therefore cannot be used as a violent felony under the ACCA. Ms. Mukherjee, can I ask what in my mind is an iteration of the same question Judge Hamilton is asking, just put a different way? What argument challenging the residential burglary conviction was foreclosed before Mathis but became available through or as a result of Mathis? What's the exact argument that Mathis opened up? Certainly, Your Honor, Mathis applies here because it is the general framework that Mr. Sanders must rely on in shaping his claim. However, it is true that prior to Glispie, it would have been futile for him to raise this claim in light of binding circuit precedent. So Glispie certainly shapes Mr. Sanders' claim here to show that Illinois residential burglary is broader. Okay, futile because of what source of law? Your Honor, in United States v. King, this court decided that residential burglary was the same as the generic offense and therefore would qualify as a violent offense. And this is something that my partner will address in more detail. Well, so I understand the government, there's an ongoing debate about whether circuit precedent is sufficient to authorize relief under 2241. And I understand you may want to steer away from that debate, but I don't know that I really think you can. Could you, let's assume that at least I don't accept the idea that this is a Mathis claim. If it's a Glispie claim, why should we consider that as sufficient under 2241? Certainly, Your Honor, my answer has two parts. First, I just want to mention that this court has demonstrated a willingness to allow litigants to rely at least in part on a circuit decision as demonstrated very recently in Franklin v. Keys. The petitioner relied in part on Mathis and in part on Glispie. To answer your question specifically about whether a circuit decision alone could satisfy the Davenport requirement, there is currently a circuit split and it is possible for this court to allow a circuit decision to satisfy that requirement. The text in Section 2255H and 2255E are distinct as Section 2255H requires specifically a Supreme Court decision, whereas the Savings Clause petition does not include that language. There's also not the concern that this is opening up so many more claims because it is still a very narrow avenue for petitioners to challenge their sentence. They would still need to show that there is a new case of statutory interpretation that was formally foreclosed to them. But opening up Savings Clause release for circuit-level changes in the law would privilege statutory claims over constitutional claims? That was one of the major reasons why the Sixth Circuit rejected that approach in the Hueso decision? Yes, Your Honor, that point is duly made. However, because of the narrow circumstances that petitioners would still be able to rely on the Savings Clause petition, even if circuit decisions are able to qualify, it doesn't become a... Actually, it's not very narrow at all. We engage in new statutory interpretation analysis all the time and change course from circuit law, especially in the area of the ACCA as recent years have demonstrated. Yes, Your Honor, it is our contention that this would be a narrow circumstance as a petitioner would still have to satisfy the narrow requirements such as bringing a new case. They would have to show that they met the miscarriage of justice prong, which they would have to show that they did not have more than four prior violent felonies in the context of ACCA. So it is something that this court certainly could allow, and as I mentioned before, this court has demonstrated a willingness to allow petitioners to rely at least in part on a circuit decision. All right, thank you. It looks like it's Ms. Callahan's turn now. Thank you. Thank you. May it please the court. My name is Madeline Callahan, and today I will address the second and third Davenport factors on behalf of the appellant, namely that Mr. Sanders could not have invoked this argument in his initial 28 U.S.C. 2255 motion and that denying his petition would result in a miscarriage of justice. First, Enri Davenport requires that petitioners seeking relief under the Savings Clause demonstrate that they could not have invoked their current arguments during earlier proceedings. In Perky v. United States, this court held that in order for a petitioner to meet this Davenport standard, he must show that it was not possible as a practical matter to raise his current argument during earlier proceedings. Mr. Sanders satisfies this requirement and thus ought to be granted relief. It would not have been feasible as a practical matter to have successfully relied on Mathis to bring his current argument prior to now because first, finding circuit precedent was squarely against him and second, until this point, he was a pro se litigant. In Chazin v. Marski, this court determined that an appellant can show that it was not possible to invoke their current arguments at earlier proceedings by proving that it would have been futile to have raised the argument due to finding circuit precedent, which was squarely against him. So do you have Kain in mind? Yes, Your Honor, we do. Okay. So what I think in substance what you're saying, correct me if I'm wrong, is that Mathis showed Kain to be wrong. Yes, Your Honor, that an application of Mathis. Okay. How? Mathis showed Kain to be wrong because if we analyze an indivisible statute in the way that Mathis prescribes, namely via an elements approach versus a means approach, and then under that analysis, we can see that Kain was wrong because under that analysis, limited authority doctrine does come into play, as Glispie illustrated, and therefore Kain's unequivocal holding that residential burglary is no broader than the generic offense under Taylor would be incorrect. Can I offer an alternative reading of Kain? You can tell me it's mistaken. I read Mr. Kain to be arguing, hey, I didn't commit a qualifying predicate because I didn't engage in violent conduct. And what we said in Kain was, well, hold on, that's not how the categorical approach works. It's not fact dependent like that. Under Taylor, you need to look at the statute, you know, et cetera, et cetera, and determine whether it's categorically overbroad or not. And then we have one or two sentences that say, it looks like Illinois residential burglary fits within the generic definition. There's no problem that way. That's the way I read it. So I don't see what about our very limited statements about the Illinois burglary statute demonstrates an error under Mathis. In other words, we said so little. How does it implicate the whole means, elements, all that? Your Honor, I think the way in which the means, elements distinction is ultimately implicated is that prior to Mathis, this court at least had the option to change course in how it analyzed seemingly indivisible statutes. So admittedly, prior to Mathis, this court was employing a categorical approach to statutes such as the Illinois residential burglary statute. However, they were not necessarily required to analyze them in a means versus elements kind of way and thus to ultimately reach the decision that under the categorical approach, it was narrower than the generic offense. Well, we were doing divisibility analysis under the modified categorical approach. The question is whether we were doing it correctly because Mathis and DeCamps before it were course corrections because the circuit courts were misapplying the modified categorical approach. Yes, Your Honor, and absolutely that analysis was occurring. It's just a question of to what degree Mathis had to lay out a brand new rule versus to what degree it could inject clarity into how a means versus element distinction must be applied. Well, to that point, what in our case law suggests that we're not the Eighth Circuit, to put it quite bluntly. Okay, the Eighth Circuit was doing it wrong. So we're a couple of other circuits and Mathis corrected that. DeCamps tried to, didn't succeed, Mathis did it. So as I understand our case law during this interim period, we were sending mixed signals. Yes, Your Honor, if I'm understanding your question correctly, I think that prior to that... Maybe I can focus it more. Were we focusing on the means elements distinction in applying the modified categorical approach or pivoting to the modified categorical approach when a statute that's alternatively phrased is categorically overbroad? As I understand it, Your Honor, no. This court was unlike the Eighth Circuit and was not performing a means distinction. So we're not contending that this court was even necessarily... The problem with the Eighth Circuit is that it was not doing that. My question is, was the path that your client seeks to access the 2255 gateway to 2241 relief available to him in our circuit or was it foreclosed because we were disregarding the elements means distinction in the way that the Eighth Circuit was? Your Honor, it was not necessarily foreclosed because this court was doing anything similar to what the Eighth Circuit was doing. It was foreclosed because... Well, it was foreclosed in large part because binding circuit precedent was squarely against him, which is a consideration as laid out in Chazen. So effectively speaking, Mathis injects this necessary clarity, makes it so that this court can't really change how it was doing things even though it was seemingly doing things correctly prior to Mathis. Now it has to continue doing it that way. However, prior to Glispie, it would have been futile for him to have attempted to invoke Mathis to bring this kind of residential burglary argument or frankly likely any other argument because of the binding circuit precedent. That's a very odd position. And I'm struggling with this because I just am not seeing how Mathis opened the door here for Mr. Sanders' argument. Glispie I understand, but the residential burglary statute problem that Mr. Sanders relies upon here has nothing to do with whether it's phrased in the alternative. It's when the intent to commit a crime has to have been formed, right? Yes, Your Honor. Okay. So to go back to Judge Scudder's earlier question to your colleague, and I may not be able to phrase it as well as he did, but in essence, so what argument was foreclosed before Mathis that Mathis opened up? I understand the point that King foreclosed this more general attack on the residential burglary statute and that Glispie cleared that way, but you all don't want to seem to defend that path to 2241 relief. Your Honor, my answer would have two points. The first would be that if this court were willing to allow reliance on a circuit decision as the majority. We have done so. The question is whether we should continue to do so. Your Honor, my contention would be that it's perhaps not necessary, but that it would not necessarily be an error to allow the continuation of reliance on a circuit court decision given the aforementioned reasons by my co-counsel, Ms. McKergee. However. Before you get to your however on that second alternative, your argument would have to be that the Fourth Circuit was correct in Wheeler that a circuit level decision is sufficient for savings clause relief and the Sixth Circuit was wrong in Hueso. So you have to defend that position. Yes, Your Honor. The primary two reasons that a circuit level decision could potentially serve as a new rule are largely listed in the dissent in Hueso. Namely, as Ms. McKergee noted, that we likely ought not assume that the distinction between requiring a Supreme Court decision in 2255H and not requiring a Supreme Court decision in 2255E was mere accident, but rather that the legislature did act intentionally in leaving out that requirement in 2255E. And because while there may be concerns about broadening the scope of 2255E and permitting petitioners over ability to bring such a petition, there are still so many requirements that would need to be met under the Davenport factors, such as, for example, showing a miscarriage of justice that is perhaps not an entirely founded concern. What about the question of privileging statutory decisions over constitutional decisions? Your Honor, I think that on a textual basis perhaps it would be privileging a statutory decision over a constitutional one, but I think that that's kind of where the other Davenport factors kind of come into play to ensure that it's not a watershed moment in allowing so many more 2241 motions than 2255H motions. And therefore, because Mr. Sanders does meet all three Davenport factors, we respectfully request that this court grant him relief under 28 U.S.C. 2241. Thank you very much. Thank you. Mr. Kutchin. Your Honors, may it please the court, counsel, my name is Jim Kutchin and I'm here on behalf of the respondent today. In respondent's view, this is another case where the court does not need to reach the question of whether circuit precedent can qualify under Davenport. If the court were to reach that, for the reasons stated in our brief, we don't believe that it should. But really this case turns on the question of whether the limited authority doctrine argument was available to Sanders in this circuit prior to Gillespie. And I think the answer to that is very clearly it was. Just last week or maybe a week before last in Franklin, this court described Gillespie as a routine application of Taylor. There was nothing about Mathis that opened up any argument that was previously foreclosed or even made it a long shot for Mr. Sanders to have brought this claim in 2006 when he was convicted and sentenced or 2009 when he filed his 2255. The decision, as we previously discussed in King, merely addressed the arguments that were presented to the court. And as Judge Cutter indicated, those were clearly just about the facts, that the facts of this case were nonviolent, therefore it should not be considered a violent felony. And the court said under the categorical approach of Taylor, we don't look to the facts underlying the question. Right, but we did state the holding pretty broadly, right, in King, that this statute's elements fit the federal generic burglary definition, ergo this counts. Your Honor, the court did, but as the court has later explained in Smith, that a given decision addresses one argument that it's presented with on a subject doesn't mean that it has addressed all arguments on that subject. And that's, in Smith, that's what the court had to say about Dawkins and said, despite what Dawkins said that was phrased in similarly broad language, that the question of the locational element was indeed still open. So King could not have, did not and could not have, foreclosed the argument that the court was presented with in Gillespie. And there's no reason to believe that the court would have reached a different conclusion in 2006 or 2009 than it did here. As the court laid out in Gillespie, the Illinois Supreme Court had come up with a doctrine, limited authority doctrine in 1968, I believe it was, in Weaver. And appellate courts in the state had been applying the limited authority doctrine to residential burglary at least as early as 1980 and doing so routinely. And the Supreme Court itself, Illinois Supreme Court itself had applied the limited authority doctrine to home invasion, which contains the same without authority element that the residential burglary statute. There's nothing that occurred and all that occurred, you know, 20 years before Mr. Sanders stood in front of the, stood in front of the sentencing court and could have made those same arguments. And there's nothing in, in, in the intervening time period that would lead anyone to believe that this court would have reached a different conclusion had it been presented with the argument at the time that it should have been presented. Isn't the question of whether a circuit level decision suffices to pass through the savings clause gateway to 2241 relief logically antecedent to the question about whether a Gillespie-like argument was available to Mr. Sanders, assuming this is not a Mathis claim? Well, Your Honor, I, I don't want to quibble with the court. I guess you could view it both ways. I think if the answer to the question is it wasn't foreclosed, it doesn't matter what source the rule that the, that the petitioners relying on comes from. Well, well, doesn't that depend on whether this is a Mathis claim or not? And, and the question, if it is a Mathis claim, the question is whether we were doing divisibility correctly here in the I mean, there's kind of a couple of different layers to the question of whether the claim was foreclosed. Well, Your Honor, I guess I don't see this as a Mathis claim because I, I don't think anyone's ever asserted or believed that the residential burglar statute was a divisible statute. I mean, it, it, it has elements. And the question is whether the LLP without authority element, how the law defines that, whether that meets the generic definition. So it's categorically overbought because there's two ways to meet the, the element of unlawful entry, right? One of which is broader than the federal definition. That's the whole implied authority doctrine that was clarified by the Illinois Supreme court in Glisby. I guess I don't understand it to be a mean, I don't understand it to be an alternative. The limited authority doctrine says you can be privileged to enter for particular reasons, but if you have the intent to commit a felony, when you did, it didn't extend to your reason for that entry. I guess I did. It's certainly not the classic means versus elements distinction that we usually see in the, in the statutes. It, it creates a new mode of commission for the burglary offense, which ordinarily requires unlawful intent at the moment of entry. But the state Supreme court expanded that by applying, but that's the way that intent element by applying the limited authority doctrine. There's two different modes of satisfying the intent element of the offense under state law. And it is difficult to phrase the question without creating the same problems that, that Mathis was designed in later cases were designed. But again, in respondents view, just because Illinois, the Illinois Supreme court defines without authority to include something doesn't mean that it is a Mathis issue. Can I try it this way, Mr. Cutchin? Sure. Okay. I think what you're saying is we, we know as a matter of fact after Glisby one that the Illinois Supreme court answered, the mail came back and told us, okay. When you look at Glisby two, taking the answer that came from the Illinois Supreme court, there's nothing in the reasoning of Glisby two that is dependent upon anything in Mathis. That's correct, Your Honor. And that's what I was rather inartfully trying to say that there's nothing about the analysis that was applied that impacts the rule or the holding. Right. So, so your point is I understand, you know, whether see whether you prevail or not, but your point is that nothing, Mathis doesn't change anything here vis-a-vis the analysis, this statute. That is correct. Now Glisby two is a big deal for, um, you know, Mr. Sanders here because Glisby two is not King and Glisby two is good news for Sanders. Your point is you can't, you can't get to Glisby two because this whole mode of analysis was available to you before all this. Yes, Your Honor. That's exactly right. Okay. Um, Glisby could as well have been named Sanders in terms of the case books. Your Honor, it's like you're reading off the page. I have that actually written down that had Mr. Sanders raised the argument when he could have raised it, we would be talking about Sanders rather than Glisby. Um, so it, the answer to the question that I believe, uh, obviates or, or, uh, makes it unnecessary for the court to reach the choice or the, uh, the, uh, circuit precedent question is the fact that this claim was available to Mr. Sanders at all times prior to his 2241 petition. Do you agree it would have required overruling King in part? Your Honor, I'm, I'm not sure that it would because Dawkins, uh, didn't purport to overrule other decisions. It would be the consideration of a claim that wasn't presented in King that could lead the court to a different conclusion and whether the court would choose to circulate that under rules 40 E would be up to the court, but it's not the question that was presented in King. Part of the, part of the problem is, you know, is that, and we've, we've been struggling with this for years, but, um, is that our, our 2241 cases have tried to avoid, uh, pressuring defendants to bring foreclosed claims to avoid, I think, clogging the judicial pipes is the phrase back in Davenport if I remember correctly. Um, and it seems like, uh, obviously Mr. Glispie, he eventually was able to prevail on such a theory, but, um, I would, it seems to me that that logic might well have applied to King, uh, under King if Sanders had tried to bring a direct challenge. Your Honor, I don't think that it would for the same reason, uh, that in White and Boyer, uh, that the court, uh, rejected, uh, the argument that Reed's novelty standard in those cases had been, uh, had been met. The court said there's a qualitative difference between on the one hand, the theory for which the basis and authority have long been in existence, but which has only been recently seized upon. And on the other hand, a theory which has been argued thoroughly and rejected in the past, but is now accepted for the first time. I think the, the policy consideration that, that you're citing judge Hamilton would be, we shouldn't hold defendants to, uh, raise arguments that have indeed been rejected. Um, but this is not an argument that had been raised and rejected. The difficulty though, Mr. Cutchin is, uh, Matt, imagine yourself being Sanders sitting in a jail cell and he reads the following sentence from King. These elements correspond to the elements of generic burglary outlined in question has been answered. I mean, it's pretty, it's pretty short. It's pretty declarative. It's pretty clear, right? What are you supposed to do? I mean, I think you say, well, we got smart lawyers and they can figure out, well, you can attack it this way and that way. Is there any reality that for some guys sitting in a jail cell? Well, your Honor, I think what the court's getting at or what, what you're getting at, um, is the fact that he was pro se, but that's going to be true in almost every, uh, 22, five, 22, 55 such a situation. And, uh, by the time we get to the 2241, we're invariably going to be talking about. Fair enough. But the point that I think judge Hamilton is injecting into the dialogue, which is helpful is just when you, it sure looks on the face of King. So Mr. Sanders can, you know, contend that I was shut down. And, and if I may, that's the point you made in the district court in Mr. Sanders case, correct? King is controlling. It was on the questions that, that he presented. He didn't present. Well, the seventh circuit has repeatedly held that the Illinois residential burglary is not broader than generic burglary. See Dawkins and King. Right. And I think that answered the question that was presented in that petition. It, it doesn't answer the, the question that's now before this court, that, that the court has invited him to raise, which was the limited authority doctrine. Could I ask you, Mr. Cutchins about the, um, this, this very, I think quite challenging question about circuit versus Supreme court president. If I know you don't think we need to get there, we'll see. Um, but, uh, I guess I'm, take burglary statutes alone with 50 States. Many of them have multiple burglary statutes. Some of them arguably divisible, not divisible. Some are partially divisible. So what does it, does it make sense to say that you need a Supreme court ruling on each of those questions in order to allow relief under 2241 for people for whom those burglary predicates were used for in sentencing? Your Honor, I think it does because you have the issue. You're, you're not just talking about defendants that were convicted, uh, in the circuit that happened, that may be considering that question. Uh, the problem with allowing one of the problems with the line circuit precedent to provide, um, uh, to provide a pathway under, under Davenport is that, uh, you're asking this district courts is more eloquently than I can explain it in way. So, uh, you're asking district courts to sit in judgment of what went on in another circuit under different law. So I think the answer is yes, that it certainly does make sense that changes that can afford saving clause relief must come from the Supreme court. If that's right, the Supreme court might have nothing else to do for decades to come. And we're talking about hundreds, thousands of cases. Well, I think the court, it, it can certainly be that, uh, the, the court provides the Frank framework as it did in, um, in various cases, Taylor in various cases, uh,  and if that change springs from what the Supreme court has done, that may well be enough. But just to say that, that, that, as in this case in Glispie, that, that a circuit level decision, uh, that wasn't foreclosed, that wasn't, um, that wasn't based on any change in the law by the Supreme court to provide relief, uh, doesn't make sense in the 2241 context. Because here, I mean, the question is, is easier here, because you're talking about a petitioner that was convicted and confined in the same circuit, but that's not always the case or even often the case. Stick around for the next two cases. You'll hear a lot more about that. I've read them. I've read the brief. Sure. All right. I don't. Can I ask one more question, please? Just one quick question. Did Glispie to overrule Kane? I guess I would say it abrogated it. I don't think it overruled it because it didn't cite it. Was there a difference? No. Um, I, let me rephrase my answer. Um, I think it's a hard, I mean, I look, I, you're stammering because I think it's a hard question. It doesn't, um, it goes back to something judge Hamilton asked earlier. Uh, it's, it considered an argument that wasn't considered in King. Um, so it's inconsistent with the broad language cited, but it doesn't overrule King insofar as King said, we don't look at the way facts are presented. So I, I, Oh, it's fair. It's I look, it's, it's true. It doesn't even mention King. No, that that's a, yes. That's what I said. It doesn't mention it and it was presented considered an argument not present. Yep. All right. Thanks. Thank you. Ms. Callahan. Your honors in Chazen and in Perky, the court determined that the standard for impossibility for the petitioner to bring an argument in a previous proceeding is under the lens of whether or not it would have been futile to do so as a practical matter. The government cited Smith and Dawkins in order to show that other arguments were in fact feasible prior to Glispie. But in fact, both of those cases highlight the sheer futility of attempting to argue that Illinois residential burglary was any broader than the generic offense because in both Smith and Dawkins, the litigants were unsuccessful just as Mr. Sanders was. Additionally, futility must be considered via the lens of whether or not it was practical in order to bring such an argument. Per Perky's standard, it was entirely impracticable for Mr. Sanders to have brought the Glispie type argument that Mr. Glispie did bring because Mr. Sanders was pro se making his petitions from a jail cell. Whereas the litigant in Glispie was fortunate enough to have been represented by a federal defender. This court noted on page three of its order granting this rehearing that it was unlikely that Mr. Sanders proceeding pro se from prison would have been able to have come up with the kind of novel legal theory that the litigant in Glispie was able to ultimately successfully employ. Therefore it was not feasible as a practical matter for Mr. Sanders to have attempted to bring this kind of argument up until this very moment. Well, that, that will be true of every pro se prisoner and almost all of these 2241 cases and successive 2255s are pro se, which would open the door if that's the definition of a claim being foreclosed. Yes, Your Honor. That is part of the definition of a claim being foreclosed. But again, there are other Davenport factors to consider, namely whether or not there was a new rule, whether or not they rely on that new rule, whether or not circuit precedent was actually binding and whether or not they can even demonstrate a miscarriage of justice because they lack the necessary predicate offenses and whether or not their petition would be moved in the long run anyway due to set offenses. And it is for these reasons that we respectfully request that this court reverse the decision of the district court and grant Mr. Sanders relief under section 2241. Thank you very much. All right. Thank you very much. Our thanks to all counsel and Mr. Palmer. Thank you to you and your students for accepting this appointment and arguing and briefing the case so ably. Thank you very much. Our next.